We're ready to move on to our next case, which is Cogdell v. Reliance Standard Life Insurance Company, and we'll first hear from Mr. Bachrach. Good morning, Your Honors. May it please the Court? Good morning. I'm Josh Bachrach. I represent the appellant, Reliance Standard, and I'd like to reserve five minutes of time for rebuttal. This appeal challenges the district court's decision awarding disability benefits in an ERISA case. And we raise a number of arguments on the standard of review that was applied by the district court, we believe erroneously, but I don't think you even need to address that because the district court, under its de novo review, is clearly erroneous in its conclusion that disability benefits should be awarded. So the parties agree the start date for this disability claim is June 7 of 2022. And when we look at the record here, we see that six days before that start date, she's seeing her primary caregiver, who is a physician assistant, and that person is describing her condition at that time and in the past few months and says that she had previously had COVID. But the doctor's saying she had completed pulmonary therapy several months earlier and was doing good, that she was back to work full time on most days. Her brain fog had resolved, and that's the big issue, was that there were these cognitive complaints. So, counsel, you're going directly to the merits of the total disability finding? I am, Your Honor, initially because I think it was clearly erroneous for the district court to find, to make several findings, and the ultimate finding that this person was disabled. I will get into the other arguments, but when we have the district court making conclusions that she has, that she has tachycardia, and that's part of her disability. You should be sure to time your argument, because if we were to disagree with you on the merits part, we would need to resolve the other questions. A hundred percent, Your Honor. And I'm only going to spend a few minutes more on this. So, the district court said she has tachycardia. Even if she does, which we don't think she does, how's that disabling? But in January of 2023, there's a full cardio evaluation, and it's normal. The district court concluded that she had dysautonomia. That's also known as POTS. It causes dizziness. And that was a basis for finding disability, but the testing for POTS was negative. The district court said nobody said she's malingering, yet her own neuropsychological evaluation says there are significant signs of symptom exaggeration. So, the district court here made a number of these factual findings. There are test results throughout this period that were all negative. She did have complaints, but all the testing is negative. She's discharged from her therapist in August of 2022, within a few weeks or a few months of the start of the disability claim. So, we think when you look at the record itself, this is clearly erroneous. But did the district court applaud the wrong standard of review? Definitely, because the starting point on this is the language in the plan and the Supreme Court. In Glenn and in the Supreme Court case before that in Firestone, the Supreme Court stated that if the plan language includes a grant of discretion, the decision of the plan and its interpretations are reviewed for abuse of discretion. We all agree this plan has that language in it. As I've read the briefing here, the regulation that sets out an initial 45-day period for review and determination on a disability claim, you are not challenging the validity of the regulation to set that 45-day period? In certain ways, we are, Your Honor, because when you look at the statute Because I don't see that in your briefing anywhere. You challenge other things, but I don't see you challenging the lack of authority to set the 45-day period. You seem to agree to that. No, Your Honor, we do. In fact, we state, well, let me take that back. Does the Department of Labor have, through the statute, authority to enact regulations? Yes. And what does the statute say? You must provide a full and fair review during an appeal. So that's what the Department of Labor is supposed to be doing. Well, is it your position under the ERISA regulations that, under your plan, the administrator is granted unlimited, unreviewable discretion in determining what special circumstances are? That's correct, Your Honor. We cite two cases out of those. Not unreviewable.  Let me take that back, Your Honor. You're right, Judge Floyd. So what gives your administrator the right to ignore the 45-day requirement on special circumstances? They didn't, Your Honor. Our position is they fully complied because they sent a 45-day letter before the first 45 days ended saying there are special circumstances, we have to review all of your medical records. Counsel, take a step back. Yes, sir. Because that goes to my question that I still don't know the answer to. Is that initial 45-day period as set by the regulation a valid requirement? I believe it is. I believe it is as valid. So you're bound by the... We'll just stick with the initial 45 days. You're bound by that. Unless there are special circumstances.  And then we have 45 more days under the regulation. All right. So to follow up on Judge Floyd's question, what's the special circumstance in this case? So the special circumstances in this case were the claimant has 180 days, but he or she took 215 days to submit hundreds and hundreds of pages of medical records. They needed to be reviewed. They were reviewed initially by a nurse. That nurse said, you should have two specialists consider these records. And we don't have internal doctors who make these decisions. We're looking for the right answer, so we hire independent experts. And those independent experts, we go through a third-party vendor. It takes time to get that done. But you did, I mean... Would you... No, go ahead. I'm sorry. I guess two questions. One is, do you think... Is it your position that the need to get outside experts in and of itself is a special circumstance? Or was that special circumstances due to factors in this case? I think there are two parts to that. And I know counsel's argued that getting medical reviews is never a special circumstance. The first part of that answer is that the regulation does not define what a special circumstance is. It only says, for example, if a hearing needs to be scheduled, that's it. So there's no defining statement in the regulation itself. My client has discretionary authority. And what the Tenth Circuit has stated, and other circuits as well have stated, that that discretion goes to whether you have special circumstances. The Brunner case out of the Fifth Circuit, which is a fairly recent case, the Tenth Circuit in Holmes says that the plan has absolute discretion, sole discretion, to decide if it has special circumstances. Why? Because judges aren't in the everyday job of deciding these claims. My client is, and it knows when it needs additional time. Mike, I'm not sure I got an answer to my question.  I'm not criticizing. You may be answering it indirectly. It sounds like your answer is focusing on the fact that the regs permit the plan administrator to determine what are special circumstances. And so, which I think does maybe go to Judge Floyd's question, is in your view the plan gets to do that unless, I guess, what's the review standard? Do we review that de novo? Do we review that standard for abuse of discretion? What do we do? That's what the Holmes Court said out of the Tenth Circuit. So what's the answer? Just tell me the answer. The answer is that it is reviewed for abuse of discretion, and the district court didn't do it. It substituted its own judgment and said you don't have special circumstances. What if, assume you're right there, how did you comply with the requirement and the regulations that you identify the time by which the review is going to be completed? Okay, good question. The regulation also states that de minimis violations that do not cause prejudice. Okay, assume I don't think it's de minimis for answering your question. It sounds like you're conceding you didn't do that, but you think it's de minimis.  I got you. There was no prejudice to the claimant. She had counsel. Counsel knew what 45 and 45 is. If our test was just prejudice, and I think that's a fair point, that this was all done within the 45-day, extra 45-day period, you got the answer. If it was simply a prejudice question, that might be one thing, but don't the regs define de minimis to have several parts, all of which must be met, and one is good calls due to circumstances not within your control? Something like that.  Is that language in there, or is that how courts are treating it? It might be in there, but it is beyond our control, because when we're trying to have independent reviews and we're contacting vendors to make sure that we're doing what the actual statute says, which is a full and fair review, that takes more time. You did it within 45 days from the time you started. In other words, I don't know the whole thing, but just timeline-wise, from the moment the records show you started handling the claim, it was all done within 45 days. So it doesn't look like this was something that couldn't be done in 45 days. And counsel says that we waited 35 days for the appeal. That's incorrect, because as soon as the appeal came in, it's going to a nurse. It went to the nurse. The nurse is the one who said, I think for a full and fair review, you should get experts in two different fields. Then they contact the vendors. But that was about a month later, though. Well, the nurse review wasn't. The nurse review is within the initial time. The nurse review, my recollection, is as soon as the claim comes in, within 10 days, there is a nurse who's reviewing it and giving this recommendation for the additional reviews. Well, she completed her review on August the 23rd, and it was forwarded to the appeals department on September the 19th. In fact, the reason in your own records for the delay and wanting to extend the 45-day period is a delay in appeal referral, which kind of takes us back to the fundamental question, at least to me, is why is this case a special circumstance that differentiates it from any other disability case? Well, I think that when a claimant submits several hundred pages of records and statements and everything, this isn't a routine case. The Cuisinberry case talks about the need to review medical records, and that's what was done here. The Harrison case from this court talks about the need for an exchange of information. The only language in the statute is a full and fair review, right? That's what we were trying to do here. That doesn't mean three days after 45 days ends you pull the rug out from the defendant so you limit its ability to address what you've submitted. But I'd like to go to why I don't think the regulation can do what it purports to do, and that is to say you lose discretion. Because, again, that is nowhere in that. Counsel, in formulating your answer, let me put this out for your comment, which I think ties into the regulation. We've already established that that initial 45-day period set by the regulation is valid. So if we were just to assume that we disagreed with you that there was a special circumstance here, then it would appear under the Firestone case and Justice Barrett's opinion in Fessenden that applying trust principles, there would be no exercise of discretion by the fiduciary, and therefore nothing to which discretion is owed. So if you could include that in your answer. Your Honor, that is exactly where I was heading. I think the starting point to this is the Supreme Court decisions where they have never held that you lose discretion under any circumstance. In the Glenn case, the Court held that even a conflict of interest doesn't do away with discretion. It is just a factor to consider. In the Concrite case, you actually had a prior abuse of discretion on the same issue, and the Court said you don't lose discretion still. So what courts have said, the McIntyre case from the Eighth Circuit, the Ian C. period case out of the Tenth Circuit, what they say is let's follow what the law says. You have Firestone deference. And so this, which I think is less than a conflict of interest or a prior abuse of discretion, what we're saying or what those courts are saying is you then just add it as a factor in whether there's an abuse of discretion. You cannot. In fact, the Ian C. case says that you cannot do away with Firestone discretion, that the regulations are wrong to put in language that there's a loss of discretion or it's not an act of discretion. So what if the regs said if you don't answer on time, you are deemed to have accepted or admitted the claim? That goes well beyond what they are authorized to do under the statute. And under the Alloper-Bright case from the Supreme Court last year, they can't do that. They have to follow the directive of the statute. And the statute says nothing about standard review either. But what the courts have said, that's for us to decide. It's not for the Department of Labor. And that was the Ian C. case also. As to your Alloper-Bright argument, the DOL's interpretation of the regulation you're challenging specifically disclaims the department intended to prescribe the deference exercised by the reviewing court. Which I think is one of the most hypocritical statements that can be made because it says in the regulation that if it doesn't abide by these regulations, it is not an act of discretion. Discretion only matters for the standard of review. So that statement is disingenuous in my opinion. Well, if it's true, what remains of your argument? Well, I don't think they have the right to say that. And my argument is, as the Eighth Circuit has said, as the Fifth Circuit has said, is you just look at whether it's a factor. Under Glenn, you still have to apply abuse of discretion standards. But you have the Seventh Circuit. The question here is we've used substantial compliance, and so the district judge found the standard to be the no-go review, so that's what we're looking at. So if we took the Seventh Circuit approach, they don't use substantial compliance at all. They use a no-go review for any and all violations. That was my next point, Your Honor, and you hit the nail on the head because this circuit doesn't follow strict compliance like the Seventh Circuit in Fessenden or the Second Circuit in Haley. Well, we might use this case to do that. So what about the Seventh Circuit's approach? Because that goes against precedent from this court. In the Ellis v. Metropolitan Life case, Brogan v. Holland, this court said that substantial compliance is all that's required. And I appreciate that, but were the cases that set that standard before the regulation that imposed de minimis review? Correct. That is correct, but I don't see a difference in it, to be honest, because, again, the overriding concern is a full and fair review. Hold on, let me play that out for a second. So if before regulations our court adopts the substantial compliance standard, which you say it does, I think that's understood, then regulations are enacted. And wouldn't our analysis be, okay, Congress has delegated the agency certain power. Was it a proper delegation? Was this de minimis thing within the scope of the delegation? If the answer is that's all permissible under delegation law, and the whole delegation cases, wouldn't newly adopted regs just naturally then apply? It's not like, I mean, it seems like that's, and we would then be necessarily applying the regs. Now your next question is whether substantial compliance and de minimis are the same. I'm not sure they are, but I understand your point. But is that framework right that I just laid out? I think so, but there are other considerations as well. And, again, that is that the Supreme Court has never recognized an exception. And it's for the judges to decide whether there's an exception. An exception to what? To deferential review when there is language in the plan. It has never found an exception. So that's why in McIntyre the Eighth Circuit said we can't. In the Tenth Circuit case they said we can't review this de novo. It just follows what Firestone says and Glenn is it's a factor to consider. I'd also add one more case to the mix here, because I think this goes to the heart of it as well, and that's Shedlack v. Braswell and also the Weaver case, because in those cases this court said that a procedural violation cannot result in a substantive remedy. But when you have a court saying that the standard of view now goes from deferential to de novo, and more importantly, or equally important, I guess, by the way, all that evidence that you still did within the additional 45 days, all those medical reviews, I'm not going to consider them, which this district court did. That almost guarantees you the claimant is going to win, because their evidence is unrebutted on appeal. And that then means there's a substantive remedy. But, on the other hand, the whole purpose of ERISA was to keep the insurance fee to the buyer. And so if we allow unfettered discretion by the insurance company, what good is ERISA? Well, ERISA also in the primary goal states that it is to award claimants benefits due, and it's in the statute of language too under A1B, benefits due under the terms of the plan. And, again, 1133 says what is its goal? That there must be a full and fair review. Full and fair review doesn't mean they get to put in everything they want and keep my client from addressing it or a court from considering it. So those to me are the big issues here. And hopefully I've reserved some time for rebuttal. Mr. Bachrach, we've been very liberal with our time this morning. So I think now we'll hear from Mr. Glass, and you've got some rebuttal time. Thank you, Your Honor. Good morning. I'm pleased to corporate. I'm Ben Glass on behalf of Heather Cogsdale. So there's a lot there, but I can't let the very first words out of my friend's mouth is that this claim starts on June 7 of 22. That's wrong. The claim starts a year earlier in August when she goes out on short-term disability when she has her first COVID. I don't know that it matters a lot for what else I'm going to say here, but that's wrong. He said we agree, and we don't agree. It goes back to the claim form, and the district court made this clear, is that she wasn't under this MITRE disability policy. She can't start getting her long-term disability benefits until her short-term disability and the MITRE continuation plan are finished or exhausted. And that's why she puts down 6-7-22 as, like, the date my disability began. The case actually began a year earlier. The second thing I want to remind us all is that as we talk about these regulations, the regulations are embedded in this policy. So they are a part of it. If you look at the reliance policy here, the regulations that talk about, you know, the promise reliance makes is we're going to answer you in 45 days. If we need longer and there's a special circumstance, we're going to. And it tracks the regulations. So we don't even really need to go to the regulations. And I can give you, judge, judges, it's JA-66. It's part of the policy that says review of adverse benefit decision, and it basically just doesn't incorporate by reference. It incorporates fully the regulations that we're talking about. But now let me just get to the big point I want to make here, is that under the ERISA scheme, claimants are told, look, if your application for life insurance or disability benefits or medical benefits are denied, you're not allowed to go directly to court, number one. You have to go through this administrative process. Number two, if you go to court, you don't get a jury trial like you would if this was just a regular old, I buy an insurance policy on the market and I have a dispute with you. And then when we go to court, we're giving the administrator, usually we're giving the administrator the benefit of the doubt, right? Discretion to determine benefits. And so this is what Justice Barrett, now Justice Barrett, said in Fessenden. There's a quid pro quo. And in exchange for giving up the sort of rights that we normally have when we reach a contract dispute, we're going to have a process that guarantees a fair decisional process. And part of the process is that there are time limits. Claimants have time limits. You have to give your notice of claim in time or you're out. You have to give your proof of claim in time or you're out. If your claim is denied, Your Honor, and you don't file your appeal in 180 days, plan administrators, and we cite a case where my friends at Reliance do this, they go, you didn't file your appeal in 180 days, you haven't exhausted remedies, you're out. So there are timelines that govern claims. But the regulations that apply in this case are for disability. Yes, sir. Not life or health or anything, just disability. Yes. I'm explaining the big rubric. But the regulations, the only difference, though, the only difference, though, the basic difference is that there's different, like, numbers of days in these different types of claims. And so Justice Barrett, now Justice Barrett says, look, there are timelines and deadlines for the insurance company or the plan administrator, usually an insurance company, as well. It's the 45 days. Again, that's embedded in this. Not embedded. It's stated clearly in the policy. It's a part of the insurance policy. And there's a way even for the plan administrator to extend that if they need to, if there's a special circumstance. And the policy says this is how you can extend that time. But so let's stop there and talk about that for a minute. So as you know, there's a 45-day response period, and then there is an additional 45 days that you can get if you comply. We'll come back to whether they complied. There's no question, is there, that there was a decision within those 90 days, the combination of those two 45 days, if they apply, right? I think there's no question. I mean, that's an objective fact, true. Yes, sir. So this isn't a situation where it went on and on and on. I mean, maybe you still win. Sure. But it was within the 90 days that the regs contemplate, correct? If you take the steps. If you take the steps. If you're satisfied. Yes, sir. So let's go to the steps. It seems to me there's two issues there if you took the steps, or that reliance took the steps. Yes, sir. One is special circumstances, and one is maybe the more technical issue of do you, like, identify the time you're going to answer by. And starting with special circumstances, it looks like the regs pretty clearly let the plan administrator decide special circumstances. I mean, that's a decision for the plan administrator under the regs. Do you agree with that? No, I really don't. Here's what it says. I mean, unless the plan administrator determines that special circumstances require an extension. Okay, I'll give you that. Yes, thank you for reading that to me. I'll give that to you. You don't have to give me anything. I'm just trying to get the answer right. Yes, ask the rest of your question. Well, I'm trying to get the implication of that.  Because we later deal with this reg that says if you miss a deadline, it's deemed denied without discretion. And putting aside the challenge to that, that seems like that's talking about the decision about accepting or denying the claim. So I wonder whether this determination of special circumstances is affected by that. And do we still look at that? I don't know how. I don't know if it's an abuse of discretion. I don't know if it's arbitrary and capricious. But it seems like the plan Let me try to help. Excuse me? Let me try to help. First of all, Judge Trenga did not rely on any part of the regulation changing the standard of review. Judge Trenga didn't mention that at all. Didn't rely on it. We didn't argue it below. Reliance didn't argue below that it had discretion to determine special circumstances either, right? So there's that. And what Judge Trenga said, as I read his opinion, and this is, actually this is the third Reliance case my friend and I have been involved in, where this issue has come up. There's a case called Rupert in our briefs. Was not appealed. Judge Trenga ruled they were late. De novo review. We win. Wonsang is a case that we argued. Mr. Bachrach and I came here in March. We argued it was basically the same case. Reliance gets the file. They lose the file. They wait until the very last, almost the very last day. And this court, a panel, had an opportunity to say, we're going to follow the Seventh Circuit and the Second Circuit. But it said, look, under any standard of review, under these facts of Wonsang, the claimant wins. This is very similar. Remember now, and I think I can get to answer your question is, we filed the. You're going to tell us here, Counsel, why this is not a special circumstance in the case.  It's not a special circumstance because, number one, every time an appeal, an administrative appeal is filed, the plan administrators are getting medical reviews, number one. Number two, this is of their own making. Just like in Wonsang, just like in Rupert. They lost the file. They didn't do anything with it until we write a letter because our practice is we file the appeal, and then shortly before the 45 days that we write, dear Reliance, your appeal is due in a few more days, just reminding you that we're going to file suit. And that's in the claim notes. That's when the panic button was hidden. So if that's right, how do we, I'm still trying to get for the legal rule, how we're reviewing that. I know your argument about why this isn't special circumstances, but if it says unless the plan administrator determines that special circumstances exist, do we review that under what standard? I think you review that, let's see, under what standard. First you have to ask yourself, did they actually say that in any of their letters? They just said we're taking the extra 45 days. They didn't do the steps, like there's a special circumstance, here's a special circumstance, let me explain it to you, and let me tell you when it's going to be due. So if they had said the special circumstances, if they had used those magic words and said because we've got to get some records, imagine that's what happened. Sure. And how do we review it? I keep trying to get you to give me the standard review for how we look at the special circumstances. I've asked like three times. Oh, I'm sorry. I really like an answer. I apologize. It's probably abuse of discretion. It's probably abuse of discretion. They never argued that in the district court. They never argued what you are, the hypothetical that you are giving me now, which is their reliance is saying, you know, this is a special case and a special circumstance. And I'm telling you, and Judge Trenga found, that this is normal. In fact, in the briefs in the district court, reliance said, well, of course we have to go. We have all these records. Of course we have to go and get medical reviews. So just to be sure I understand your answer to Judge Quattlebaum, in this case, and I presume others like it, you would say that when the plan administrator says there's a special circumstance, then we, the district court, or we as the reviewing court, review that determination for an abuse of discretion under the facts of the particular case. I think that has to be correct, and they have to show their homework. In other words, they cannot just wrote say, we are declaring a special circumstance, and let me tell you, Mr. Glass, and let me tell you, district court judge, and perhaps appellate judges, let me tell you how we came to that decision. Because that's the only way a reviewing court, under trust law, can determine whether discretion was abused or not. You have to show your homework. So tell us why there's an abuse of discretion in this case. Because, well, because A, they didn't show any homework. They didn't tell you why this case is special and different. B, because it's a problem of their own making because they waited 42 of the 45 days. Three, because every case goes out for medical reviewers. Four, because when they did it, it only took them five days and then seven days to get the reports in. They then waited and held another three weeks, 20 days, before they did anything with. And so that's why it would be an abuse of discretion in this case. It would be wrong, in my view, for this court to say that we are going to give the plan, in light of the actual facts on the ground, the discretion here. We're going to give them the right to say, we can send this form letter. We can extend the time for another 45 days. And let me add one other argument to that. Reliance never challenged the fact that we marched into court. They never challenged that this was deemed and denied at 45 days, giving us a pathway into court. Now, never after we are in court legitimately unchallenged, providing they, providing additional medical reports to us, which under the system of ERISA, which is the quid pro quo tradeoff, we're entitled to have all of that before the 45 days expires so that we can cart. What's your prejudice? The prejudice, as Justice Barrett points out in Fezenden, is that claimants are left not knowing when or if the plan is going to make a decision, timely decision. Number two, we don't have a chance to rebut the medical reports that they are supposed to give us on review so that we can comment on them before the final decision is made, all within the 45 or the 45 plus 45 days. So that's the. Help me. Let's slow down. Let's slow down. So I want to make sure. No, that's great. I'm just trying to make sure I understand that. So we know at least the regs contemplate the ability to get 45 extra days. Yes. And I know you're not contesting that a plan could retain outside counsel to get their views, right? Outside doctors. Absolutely. Yes, they do. Doctors. That's what they do. Help me understand why the inability to respond to outside doctors is different here than it would be in any case. I mean, you always are going to have extra. In any case where you have outside doctors, presumably you might want to respond. I mean, you could get time crunched by that within the original 45 days if it had been done. I mean, it seems like the way that works is if they do it and they comply with the 45 days or the 90 days and you need more time, you say I need more time to respond. Is that how it works? When you say you, you mean me or you mean that reliance? No, no, the claimant. You said the prejudice was uncertainty. Well, there's always uncertainty until there's a decision. Then you said the prejudice was, well, they don't have a time to respond to the outside medical providers. And it seems to me you always have that issue whether it's in 45 days or not. And if you need more time, the claimant should ask for it. Which, well, but the regulations to balance the whole ERISA scheme, the regulations put the onus on the plan administrator to get that work done, which they proved in this case they could have had it done in days had they actually looked at the file when it came in, so that we can get our, if need be, rebuttal, doctor's comments, whatever, back to them before they reach their final decision. Well, correct me if this is not right. Their letter of September 25, which is what we argued about, correct? I don't have it. Well, let's just assume we are. This is what they said. Yes, sir. Following our initial review of the medical information provided and on the file, we have determined we will require an independent physician prior to the end of our review. Further, you are aware we are required to make decisions within 45 days of appeal. Then they ask you for the 45 days. Where are the special circumstances? Is that the argument? Exactly right. There's no special circumstance there. I mean, that's just everyday routine. 100%. 100%, which could have been done on day two once they got the file. So why do you want to unconfuse me? Okay. You're talking about the trial judge reviewed this case the day before. Yes, sir. And then a while ago you said that we would review this 45-day extension for abuse of discretion. What is it? Well, I think the question that I was asked is if this letter is a legitimate use of choices, discretion that the plan administrator has, then it strikes me, and I haven't thought deeply on this before I got here, but it strikes me that you would review that action under an abuse of discretion standard. Judge Trenga said it's not special circumstance. Now, what lens he put on his brain to reach that decision, I don't know. Well, so how does that affect his ultimate use of de novo review in deciding this case? So I think it's two different things. Well, that's not what you're talking about. Yeah, okay. So when we talk about the trial judge, the district court judge, applying the standard of de novo, he's asking the question, is their ultimate decision, pay or not pay, correct? If they follow all the rules, that scale is weighted towards the plan administrator, and if they don't follow the rules, if they miss deadlines, then the scale is back to balance, and we just look at the evidence and see what the greater weight of the evidence is. Well, counsel, I thought your answer would have been based on your earlier arguments that in looking at the initial determination of whether there's a special circumstance under the first 45 days that either the trial court or this court looks at that decision under an abuse of discretion standard, and if the court determines that there was an abuse of discretion and there was no special circumstance, then the determination of whether the claimant is entitled to benefits, that would be a de novo determination by the district court, because under that theory, there is no action by the plan administrator to which, under trust principles, there would be any decision to which to give discretion. So I hope that I have not confused the court, but that's exactly my position. At the end of the day, and this is where I think Judge Trenga arrived at, is that there is, because he didn't, remember, he didn't rely on the regulation that says the standard review changes, there's no decision to look back on to say, there's no final decision, obviously, to look back on to say, and to look at the homework and to say the plan appropriately looked at this case, weighed the evidence, took into consideration the competing views of the treating physicians. There's nothing there, and that's what Justice Barrett, I think, says in Fessner. Yes, sir. I'm sorry. There actually was a decision where that occurred. It was just late. And you're saying the plan loses the benefit of its discretionary decision if it doesn't comply with the regs. And if the decision to deny is based on the regs, I think you're right. It's just a regulatory decision that there's no discretion given. It's just a fat penalty consequence of noncompliance. And then the add-on to that would be, and whatever happened after we filed suit just doesn't count, because what we're looking at at the end of the day is what information the plan administrator had when it made its decision. In this case, the decision is deemed denied, and again, they don't contest that. It's deemed denied before any of this other evidence was even created. Mr. Glass, we gave your opposing counsel a couple extra minutes, and you're over a couple now. Would you like another minute to tell us anything else? Your Honor, Judge Hagey, thank you very much. No, I am good, thank you. I would ask that this Court's opinion be affirmed. And I would ask that this Court do what it didn't do in Wonsang, which is set the rule so we know. So the bar, I mean, his life and my life are totally tied up in these cases until we retire. But tell us what the rule is when a plan violates the timing regulations. That would be very helpful. Yes, absolutely. Under any standard of review, she was entitled to benefits for her high cognitive job with a great policy that said you are disabled. If you can't work 40 hours, doing your own occupation. Of these group policies, this is like a premier level policy. So unless the Court has any other questions, I think I'm done. Thank you. All right, thank you very much. Mr. Bachrach, you've got some rebuttal time left. Thank you, Your Honor. I think counsel's conceded this point, but actually my friend has given me another argument here. And that is when he said that the special circumstances language is in the plan document itself, which it is. And since we have discretion to interpret the plan, that means we have discretion to decide if there are special circumstances. And that has to be reviewed for abuse of discretion, something the District Court did not do here. I think going to the next point where he said this disability claim started earlier, I'm going to quote from his brief on page 12. As her conditions persisted beyond the STD period, she applied for long-term disability benefits in November 22, selecting June 7, 2022 as her date of loss. That's on page 12. So that's non-dispute. This June 7 date is the start. The next point I would like to make deals with the actual two letters that invoked the special circumstances. The first one is JA202. It's on, well, it's JA202. It's dated September 20, and it identifies the host of information that was provided during the appeal. And it's significant. And it then says that we are still in the process of reviewing all of this and need to take additional time, the additional 45 days. And that was then followed by the September 25 letter, JA2024. So there are two letters explaining the special circumstances and identifying it, contrary to what my friend had said there. The next point, counsel relies on Fessenden. In Fessenden, there was no decision within the 90 days. It is entirely different. Here, there was within the 90 days. So can I interrupt you there? Of course. I hope I'm not cutting into your time too much. But we talked about this a little bit when you were up here the first time. And I'm in the regulatory section about de minimis violations. And as you noted, the benefits will not, claims will not be deemed exhausted based on de minimis violations that do not cause and are not likely to cause prejudice or harm. And I understand your position quite well that there's no prejudice here. And I asked your colleague that, so I don't need anything else on that. But then it goes on to say, so long as the plan demonstrates that the violation was for good cause or due to matters beyond the control of the plan, can you tell me how you have demonstrated that the violation in, assume I think the letter was deficient in not identifying, not saying there were special circumstances, and in the time period, in not identifying the time period. How was that for good cause or due to circumstances out of the plan's control? The important is that there's the word or. One or the other. Good cause. Harrison v. Wells Fargo, this Court's decision. This Court said that the full and fair review required under the statute, and that's what the regulation should be expounding on, says that there should be a back and forth with the claimant providing a fair and searching process. The fair and searching process for the answer, right? And so that means that we were looking to have this significant amount, JA-20-202 and then 203 identifies all the evidence she submitted. And we wanted to have this reviewed by appropriate medical experts. So that is. So the good cause is essentially the same as the special circumstances, that you got a bunch of stuff and you want some outside doctors to look at it. To provide a full and fair review to the claimant, which is what the statute calls for. And I'd also add in the Harrison case, this Court stated that the ERISA claim process should not be an adversarial proceeding. Cogdell made it that by filing a complaint within three days and saying, Oh, we're going to hold you to your 45 days. You don't have special circumstances. Even before a letter was sent, she's setting this up. That is adversarial. And as counsel said, we've had this issue in other cases. Why? Because they're always setting this up. They're trying to get rid of the standard of review that should be applied here under CLAM. So I think following the Harrison case, and you see that there was clearly a process to play games here by the claimant, that should not be condoned. I also want to respond to some other arguments that were made. Counsel argued that she had no chance to rebut the new evidence we had during the appeal. Yet you didn't because you filed a lawsuit. We sent it to her prior to the 90 days, those new reports, those two expert reports, and said, If you would like to respond, please do. But she had already filed a lawsuit. We didn't know that at the time, by the way. We didn't know that. So if she had waited through the process, she would have rebutted it. So that's not a concern. That's not a reason to say that she was prejudiced or there were any issues here. But I have to go back again. For me, the important thing is, and other courts have, as I mentioned, said this, Glenn requires that you apply an abusive discretion standard here. The regulations, I don't think it's proper for them to make an attempt to avoid discretion based on a late decision. And as the Eighth Circuit said in McIntyre, it's a very recent decision. I think it's very helpful at best. This is a factor under Supreme Court decision. And the Tenth Circuit and E&C, the same thing. Under Firestone, we have to give you deference. So what does this mean if you're late? It's a factor for us to consider as a court. It doesn't do away with discretion. It can't do away with discretion. So I think the arguments have been made here. I think the district court abused its discretion. Well, actually it didn't even do that. I think it applied the wrong standard to whether there are special circumstances. I think that contrary to what I believe my friend said, that the court never said that it was applying de novo review because the regulation wasn't filed. It's clearly stated in the opinion that's what happened. But again, there are a lot of issues to unpack here, but I keep going back to the two things. One is the Glenn case and Firestone. The second being, even if you look at this de novo decision, it is clearly erroneous under the facts. And I appreciate the extra time that your honors gave me. Unless there are additional questions? Thank you very much, Mr. Bachrach. I want to compliment both counsel on very good arguments and a difficult case. And I'll ask the clerk to adjourn court for the day. And Judge Quattlebaum and Judge Floyd will give you the greetings of the court. This honorable court stands adjourned until tomorrow morning. God save the United States and this honorable court.
judges: G. Steven Agee, A. Marvin Quattlebaum Jr., Henry F. Floyd